**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE COFFMAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MAXAR TECHNOLOGIES INC., DANIEL L. JABLONSKY, HOWELL M. ESTES, III, NICK S. CYPRUS, ROXANNE DECYK, JOANNE O. ISHAM, C. ROBERT KEHLER, L. ROGER MASON JR., GILMAN LOUIE, HEATHER WILSON, ERIC J. ZAHLER, and EDDY ZERVIGON,<br><br>　　　　　　Defendants. | Case No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.　　This is a stockholder action brought by Plaintiff against Maxar Technologies Inc. ("Maxar" or the "Company") and the members of Maxar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Maxar to Advent International Corporation ("Advent") (the "Proposed Transaction").

2.       On December 15, 2022, Maxar entered into an Agreement and Plan of Merger with affiliates of Advent, Galileo Parent, Inc. ("Parent"), Galileo Bidco, Inc. ("Merger Sub"), and solely for the purposes set forth therein, Galileo Topco, Inc. ("Preferred Equity Issuer").  Pursuant to the terms of the Merger Agreement, Maxar shareholders will receive $53.00 in cash for each Maxar common share (the "Proposed Transaction").  In connection with the Proposed Transaction, funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion.

2.       On March 16, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Maxar stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); (iii) the go-shop process; and (iv) potential conflicts of interest faced by J.P. Morgan and Company insiders.

3.       The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Maxar stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

4.       The special meeting for Maxar stockholders to vote on the Proposed Transaction is currently scheduled for April 19, 2023.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Maxar's other shareholders to make an informed decision

whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.       Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Maxar's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.       Plaintiff is, and has been at all relevant times, the owner of shares of Maxar common stock.

9.       Defendant Maxar is a Delaware corporation, with its principal executive offices located at 1300 West 120th Avenue, Westminster, Colorado 80234.  Maxar's shares trade on the New York Stock Exchange under the ticker symbol "MAXR."

10.      Defendant Daniel L. Jablonsky has been President, Chief Executive Officer and a director of the Company at all relevant times.

11.     Defendant Howell M. Estes, III has been Chairman of the Board and a director of the Company at all relevant times.

12.     Defendant Nick S. Cyprus has been a director of the Company at all relevant times.

13.     Defendant Roxanne Decyk has been a director of the Company at all relevant times.

14.     Defendant Joanne O. Isham has been a director of the Company at all relevant times.

15.     Defendant C. Robert Kehler has been a director of the Company at all relevant times.

16.     Defendant L. Roger Mason Jr. has been a director of the Company at all relevant times.

17.     Defendant Gilman Louie has been a director of the Company at all relevant times.

18.     Defendant Heather Wilson has been a director of the Company at all relevant times.

19.     Defendant Eric J. Zahler has been a director of the Company at all relevant times.

20.     Defendant Eddy Zervigon has been a director of the Company at all relevant times.

21.     Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Founded in 1957, Maxar provides space solutions and secure, precise, and geospatial intelligence solutions in the United States, Asia, South America, Europe, the Middle East, Australia, Canada, and internationally.  The Company operates through two segments: Earth Intelligence and Space Infrastructure.  The Earth Intelligence segment offers earth imagery and other geospatial data sourced from its advanced satellite constellation and third-party providers to

public sector and enterprise customers, as well as a provides advanced geospatial information,

applications, and analytic services for national security and commercial solutions.  Its solutions

include satellite access, geospatial foundation, precision mapping, on-demand intelligence, and

geospatial services.  The Space Infrastructure segment provides space-based infrastructure,

robotics, sub-systems, and information solutions, including communication and imaging satellites

and payloads; platforms for space exploration and hosting instruments for earth science; space

subsystems for power, propulsion, and communication; satellite ground systems and support

services; space-based remote sensory solutions; space robotics; and defense systems.  This

segment serves government agencies and satellite operators.

**The Proposed Transaction**

23.     On December 16, 2022, Maxar announced that it had entered into the Proposed

Transaction, stating, in relevant part:

> WESTMINSTER, Colo. & BOSTON--(BUSINESS WIRE)--Maxar Technologies
> (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of
> comprehensive space solutions and secure, precise, geospatial intelligence, today
> announced that it has entered into a definitive merger agreement to be acquired by
> Advent International ("Advent"), one of the largest and most experienced global
> private equity investors, in an all-cash transaction that values Maxar at an enterprise
> value of approximately $6.4 billion. Advent is headquartered in the United States
> and has a demonstrable track record as a responsible owner of defense and security
> businesses. Following the close of the transaction, Maxar will remain a U.S.-
> controlled and operated company.
>
> Under the terms of the definitive merger agreement, Advent has agreed to acquire
> all outstanding shares of Maxar common stock for $53.00 per share in cash. The
> purchase price represents a premium of approximately 129% over Maxar's closing
> stock price of $23.10 on December 15, 2022, the last full trading day prior to this
> announcement, an approximately 135% premium to the 60-day volume-weighted
> average price prior to this announcement, and a premium of approximately 34%
> over Maxar's 52-week high.
>
> Following the closing of the transaction, Maxar will benefit from the significant
> resources, operational expertise and capacity for investment provided by Advent.
> As a private company, Maxar will be able to accelerate investments in next-

generation satellite technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions. This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping. With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial expertise supporting many satellite and defense platforms which serve the U.S. government and its allies as well as companies across the globe.

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors. "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar. "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives. As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent. "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery, with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

**Transaction Details**

Under the terms of the agreement, which has been unanimously approved by Maxar's Board of Directors, Maxar stockholders will receive $53.00 in cash for each share of common stock they own.

Advent has arranged committed debt and equity financing commitments for the purpose of financing the transaction, providing a high level of closing certainty. Funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion, both on the terms and subject to the conditions set forth in the signed equity commitment letters.

The agreement includes a 60-day "go-shop" period expiring at 11:59 pm EST on February 14, 2023. During this period, the Maxar Board of Directors and its advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Maxar Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Maxar does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. The Company, Advent and BCI will contemporaneously pursue regulatory reviews and approvals required to conclude the transaction.

The transaction is expected to close mid-2023, subject to customary closing conditions, including approval by Maxar stockholders and receipt of regulatory approvals. The transaction is not subject to any conditionality related to the launch, deployment or performance of Maxar's WorldView Legion satellite program. Upon completion of the transaction, Maxar's common stock will no longer be publicly listed. It is expected that Maxar will continue to operate under the same brand and maintain its current headquarters in Westminster, Colorado.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which Maxar will be filing on Form 8-K.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Maxar and Wachtell, Lipton, Rosen & Katz is serving as lead counsel to Maxar. Milbank LLP is serving as Maxar's legal advisor with respect to certain space industry and regulatory matters.

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Advent and Weil, Gotshal & Manges LLP is serving as lead counsel to Advent. Covington & Burling LLP is serving as Advent's legal advisor with respect to certain regulatory matters.

Skadden, Arps, Slate, Meagher & Flom LLP is serving as lead counsel to BCI. Freshfields Bruckhaus Deringer LLP is serving as BCI's legal advisor with respect to certain regulatory matters.

## The Materially Incomplete and Misleading Proxy Statement

24.     On January 31, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Maxar stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan; (iii) the go-shop process; and (iv) potential conflicts of interest faced by J.P. Morgan and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Maxar's Financial Projections*

25.     The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

26.     For example, with respect to the Company's "July 2022 Base Case Forecast," "October 2022 Satellite Loss Case Forecast," "October 2022 Base Case Forecast," "November 2022 Base Case Forecast," and "November 2022 Satellite Loss Case Forecast," the Proxy Statement fails to disclose the line items underlying the calculation of: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

27.     The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

28.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) the Company's net debt as of December 31, 2022; (iv) the Company's tax credits expected to be utilized by Maxar through fiscal year 2027 and beyond as provided by the management of Maxar; and (v) the Company's fully diluted outstanding shares.

29.     With respect to J.P. Morgan's *Selected Transactions Multiple Analysis* and *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions and companies analyzed.

30.     With respect to J.P. Morgan's analysis of the price targets set by published equity research analysts for shares of Maxar common stock, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning the Go-Shop Process*

31.     The Proxy Statement fails to disclose material information concerning the go-shop process.

32.     Specifically, the Proxy Statement fails to disclose the terms of the confidentiality agreements the Company entered into with two parties during the go-shop process, including whether either confidentiality agreement contains a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding either party from submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

33.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan.

34.     For example, the Proxy Statement fails to disclose whether J.P. Morgan has performed any services for BCI or any of its affiliates in the two years prior to rendering its fairness opinion, and if so, the nature of the services provided, and the compensation received for such services.

35.     The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

36.     Specifically, the Proxy Statement fails to disclose whether any of Advent's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

37.     In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of J.P. Morgan Securities LLC," "Background of the Merger," and "Interests of Maxar's Executive Officers and Directors in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Maxar will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Maxar**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Maxar is liable as the issuer of these statements.

40.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Maxar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

50.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Maxar, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  March 16, 2023                    **ACOCELLI LAW, PLLC**


By   */s/ Richard A. Acocelli*
    Richard A. Acocelli
    33 Flying Point Road, Suite 131
    Southampton, NY 11968
    Tel: (631) 204-6187
    Email: racocelli@acocellilaw.com

    *Attorneys for Plaintiff*

14